Filed 6/24/14  In re Khloe B. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re KHLOE B., a Person Coming Under the Juvenile Court Law. | B253926 (Los Angeles County Super. Ct. No. CK89671) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. KIMBERLY C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Julie Fox Blackshaw, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Kimberly C. (mother) appeals from the juvenile court's order summarily denying her petition for modification pursuant to Welfare and Institutions Code section 388.[1] We affirm.

## PROCEDURAL BACKGROUND

On May 10, 2013, respondent Department of Children and Family Services (DCFS) filed a section 300 petition on behalf of newborn Khloe B. (Khloe, born May 2013), who is the subject of this appeal. The petition alleged, under subdivision (b), that mother had a 10-year history of illicit drug use, which had led to the permanent placement of Khloe's sibling, was a current drug user and had mental and emotional problems. (Khloe's father is not a party to this appeal.)

On August 29, 2013, the juvenile court sustained the petition,[2] declared Khloe a dependent, and ordered that mother not receive reunification services pursuant to section 361.5, subdivision (b)(10). Mother was given monitored visitation, and a section 366.26 hearing was scheduled for early January 2014.

On December 6, 2013, mother filed a section 388 petition seeking modification of the court's earlier orders to reinstate reunification services, place Khloe in her care or, in the

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The sustained petition reads:

"b-1: [Mother] has a ten year history of illicit drug use, and is a current user of methamphetamine, cocaine and marijuana, which renders [her] incapable of providing regular care of the child. The mother used illicit drugs during the mother's pregnancy with the child. The child's sibling, Mason [B.] . . . received permanent placement services due to the mother's illicit drug use. The mother's use of illicit drugs endangers the child's physical health and safety, placing the child at risk of physical harm and damage.

"b-2: [Mother] has mental and emotional problems, including a diagnosis of Bi-Polar Disorder and Anxiety, which render the mother unable to provide regular care of the child. The mother failed to take the mother's psychotropic medication as prescribed. Such mental and emotional condition on the part of the mother endangers the child's physical health and safety and places the child at risk of physical harm and damage."

alternative, to award her unmonitored visitation. That petition was summarily denied. This timely appeal followed.

## FACTUAL BACKGROUND

Khloe came to DCFS's attention after she tested positive at birth for benzodiazepine. Mother told the hospital staff she had failed to reunify with her five older children, all of whom had been removed from her care, and that she had a history of mental illness. Four of the children were in permanent plans in Texas. The fifth child, Mason B., had tested positive for methamphetamine and cocaine at birth in September 2011 in California.[3] Mother was denied reunification services for Mason, parental rights were terminated and Mason's adoption was finalized in May 2013.

Mother admitted using methamphetamine while pregnant with Khloe, but claimed to have been clean for about 51 days. Before Khloe's birth, mother resided at the Augustus Hawkins Psychiatric Facility for 49 days. Before that, she resided at Safe Haven in Santa Monica. Mother had been diagnosed with bipolar and anxiety disorders, for which she had been prescribed Zoloft and Depakote. Mother denied being bipolar. She said she had anxiety, for which she took medication and saw a therapist. Once discharged, mother planned to reside with Khloe at the Sleep Tight Night Transitional Living Center (Sleep Tight Center).

On May 7, 2013, hospital staff reported that mother was inappropriately feeding, holding and caring for the newborn, and behaving in an agitated, aggressive, combative and unpredictable manner. She paced the floor of the Neonatal unit, repeatedly exiting and entering the unit, and refused to follow staff's directions with regard to matters related to the newborn's safety and well-being.

DCFS filed the instant petition, and detained Khloe together with Mason in the home of his adoptive parents, where she remains. Mother denied a 10-year history of drug abuse,

---

[3] Mason was the subject of an earlier appeal and decision by this court, *In re Mason B.* (Oct. 25, 2012, B240695) [nonpub. opn.]).

and said she started using drugs in 2005 while pregnant with one of her older children. After that, she had used drugs almost every day for almost two years, but let up in 2008 and 2009. She claimed to have last used drugs about three months before.

Lanita Hamilton, the director of the Sleep Tight Center told DCFS she had known mother for about three years. Mother had participated in the Sleep Tight Center's program on and off during that period. Hamilton said mother had tested positive for methamphetamine, cocaine and marijuana in February 2013, while she was pregnant. Mother tested negative two times during her participation in the Sleep Tight Center program, most recently on May 19, 2013. The Sleep Tight Center had accepted mother into its program, and she could stay with her newborn. However, because of the nature of mother's mental illness, her behaviors and her failure to comply with her medication protocol, Hamilton was "'very concerned with the baby being released to [mother].'" Hamilton opined that the infant should not be placed with mother until she had been in a residential substance abuse program for at least a year. The Sleep Tight Center was unable to transfer mother to a residential program because she had not taken her psychotropic medications as prescribed. In Hamilton's view, mother did not comprehend what was happening, because she believed she was going to get her children back even though she was barely able to care for herself, let alone parent a child.

On June 17, 2013, mother returned to the Sleep Tight Center after leaving for a week. Mother had not tested for two weeks due to her absence. Hamilton planned to transfer mother to another program, because she believed mother was using street drugs to self-medicate. Mother's therapist at the Ocean Park Community Center told DCFS that mother, who had been a client since 2008, received individual therapy, psychiatric services and anti-depressant medication. According to Hamilton, mother's pattern for the past few years had been to progress for a short time, then relapse. Although she was linked to numerous services, mother had continued using drugs for years. DCFS concluded that, at least as of July 2013, mother was not yet "ready to live a sober, drug free lifestyle," a decision which continued to place Khloe at risk of harm.

DCFS reported that Khloe, who tested positive for Benzodiazepine at birth, "experience[ed] drug withdrawal as eviden[ced] by her stiff limbs, shaking, and high pitch crying." Mother admitted using "meth and crank" during her pregnancy. DCFS recommended reunification services be denied.

In August DCFS advised the juvenile court that the results of DNA testing had excluded a potential parent as Khloe's biological father. DCFS also reported that mother was attending the Shields For Families Dual Diagnosis Program (Shields Program) five days per week. She had a positive drug test in mid-August, but had developed a relapse prevention plan, was attending 12-Step meetings and had identified a sponsor. Staff at the Shields Program expressed concern about mother's interactions with other residents, and her as yet unaddressed developmental delays.

Mother arrived late or left early for her weekly monitored visits with three-month-old Khloe. Her demeanor during those visits was described as "load [sic] and chaotic," and caused the infant to become anxious and to shake. Mother's behavior was "explosive" and ""very unpredictable,"" and she ignored suggestions as to how to interact with the baby. The agency that had provided monitoring services for mother's visits declined to continue doing so after she was mistakenly told a visit had been scheduled and showed up the wrong day, and became "irate" when told no visit was scheduled.

Khloe has remained placed, together with her brother Mason in the home of her foster parents (his adoptive parents) since early May 2013. Mason's adoptive parents love Khloe and are committed to adopting her and giving her a stable, permanent home.

*Section 388 request*

In her December 2013 section 388 petition mother requested reunification services and asked that Khloe be placed in her custody at the Shields Program or, in the alternative, for unmonitored visitation. In support of the petition, mother submitted documentation to substantiate her claims that she had been enrolled in the Shields dual diagnosis Program since July 2, 2013, and attended programs five days a week, was working to stay sober and was regularly drug tested. She had tested negative 10 times, had attended 30 sessions, had nine excused absences and three unexcused absences. She had undergone a psychiatric

evaluation, was attending group therapy and individual psychotherapy and was being transitioned to a regional center. Mother blamed her failures in the past on her tough life and the fact that she had been a victim of rape and molestation. The petition alleged that reunification services were in Khloe's best interest because mother had consistently visited,[4] had proven her commitment to the child by complying with the Shields Program and, if the child was placed in mother's care, she could stay with mother at the Shields Program.

The juvenile court summarily denied mother's section 388 petition on the grounds that it did not allege new evidence or a change of circumstance or show that the provision of reunification services would be in Khloe's best interest. The court observed that, "[c]ircumstances are 'changing' not changed. Also a [section] 388 petition cannot be used to undercut the requirement of presenting [clear and convincing evidence] of 'best interest of the child' required to be shown at dispo to avoid bypass. Here[,] we do not have preponderance or [clear and convincing evidence] that a reinstatement of [reunification services] is in the best interest of the child."

In its January 7, 2014, report for the section 366.26 hearing, DCFS noted that mother was supposed to have once monthly monitored visits with Khloe at the Shields Program. One such visit took place in November 2013. In December 2013, the Shields Program informed DCFS that mother had left the program. Mother filed a notice of appeal from the denial of her section 388 petition on January 21, 2014.

## DISCUSSION

Mother's sole assertion on appeal is that the juvenile court erred by not conducting an evidentiary hearing on her section 388 petition seeking reunification services and an order placing Khloe in her care or, alternatively, unmonitored visitation. We disagree.

Under section 388, if it appears that the best interests of the child may be promoted by the proposed change, the court must order that a hearing be held. (Cal.

---

[4] According to DCFS, between the end of August and December 11, 2013, when she left the Shields Program, mother attended only one of her scheduled monthly visits in November.

Rules of Court, rule 5.570(e), (f).) "The petitioner requesting the modification under section 388 has the burden of proof. [¶] . . . [¶] . . . require[ing] a preponderance of the evidence to show that the child's welfare requires such a modification." (Cal. Rules of Court, rule 5.570(h)(1)(C).)

Section 388 "petitions are to be liberally construed in favor of granting a hearing to consider the parent's request. [Citations.] The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309–310.) "There are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children. [Citation.] If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the dependency court need not order a hearing." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 805–806.)

We review a summary denial of a section 388 petition for abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316–319 (*Stephanie M.*); *In re D.R.* (2007) 155 Cal.App.4th 480, 487.) We will uphold a summary denial of a section 388 petition unless we can determine from the record that the juvenile court's decision "'"exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."' [Citations.]" (*Stephanie M.*, at pp. 318–319.)

Even a liberal construction of mother's section 388 petition shows she failed to make a prima facie showing of changed circumstances or to explain why a change in the court's orders would be in her child's best interests. Mother has an extensive history of substance abuse, unaddressed mental health problems and many years of failing to reunify with her children. Her most recent efforts to address her mental health concerns and attempts at rehabilitation are laudable and, so far, appear to be promising. However, at the time her section 388 petition was filed, none of these efforts was further than six

months along.  Though mother appears to have been making a concerted effort to improve, she did not demonstrate changed circumstances.

In an unsigned attachment to her petition, mother claimed she had received a psychiatric evaluation, was being transitioned to a Regional Center to better address her needs, and had been placed on unspecified medications.  Mother said she was participating in an intensive treatment program to address her substance abuse problems, and had consistently tested clean between September 1 and November 8, 2013.  Mother claimed the proposed modification would serve Khloe's best interests because she was "sober and determined," had consistently visited the child, and requested that the juvenile court "reward this hard work" by providing her reunification services.  The juvenile court denied the petition outright on the grounds that mother failed to present any new evidence or to show a change of circumstances, and because the child's best interests would not be promoted by the proposed modification.  The record supports this ruling.

Allegations of changing, rather than changed, circumstances are not sufficient to warrant a hearing.  (See *In re Casey D*. (1999) 70 Cal.App.4th 38, 47.)  Moreover, "the change of circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged prior order." (*Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 485.)  Factors which inform the juvenile court's decision when evaluating a modification petition and our review of that decision, are:  "(1) [T]he seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F.* (1997) 56 Cal App.4th 519, 532.)  A "primary consideration in determining the child's best interests is the goal of assuring stability and continuity. [Citation.]  'When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role.  That need will often dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child.' [Citations.]" (*Stephanie M.*, *supra*, 7 Cal.4th at p. 317.)

Here, the seriousness of the problems leading to the child's dependency status is not in dispute. Although mother's petition alleged she was sober, her march toward sobriety was in a nascent stage. Mother claimed she had been sober since entering the Shields Program in July, but this period of fewer than six months was brief compared to the many years she has struggled with addiction. Mother's extensive drug use had contributed to her loss of five older children. She had unsuccessfully attempted to maintain sobriety for short periods many times in the past, and it was simply too soon to tell whether she would succeed this time.

Nor did mother's petition address the relative strengths of the bonds Khloe to mother and her attachment to her brother and prospective adoptive parents. Mother had little contact with Khloe, having visited her just once between August and December 2013. Khloe's foster parents had met her daily emotional and physical needs since she was just a few weeks old. Khloe was bonded to her caregivers, and developing well and happily. Khloe has never lived with mother and has never exhibited any bond with her. Khloe clearly looks to her prospective adoptive parents—the only parents she knows— for comfort and support. A mere biological relationship, without more, is insufficient to outweigh the strength of the bond the child has with long-term caretakers who have consistently demonstrated a loving commitment to her and to her brother, and a readiness to provide the siblings a permanent loving home through adoption. Mother's petition failed to state facts showing that the proposed change of order might promote Khloe's best interests. (See *In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1450–451.)

Thus, even if mother had succeeded in demonstrating changed circumstances, there was no showing whatsoever of how the best interests of her infant daughter would be served by depriving her of a permanent, stable home in exchange for an uncertain future in mother's care. (*Stephanie M.*, *supra*, 7 Cal.4th at p. 317; *In re Casey D.*, *supra*, 70 Cal.App.4th at p. 47.) It is not reasonably likely that additional evidence would have swayed the court to grant the petition and offer reunification services to mother, let alone place Khloe in her care or give her unmonitored visitation. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081.) The petition does not attach any documentation or independent

evidence-such as from an expert or other professional—demonstrating mother was able to adequately care for Khloe. (Cf. *In re Hashem H*. (1996) 45 Cal.App.4th 1791, 1799 [mother's allegations of changed circumstances were "supported by a letter from [her] therapist, which . . . demonstrated the availability of admissible evidence to support [the] allegations of changed circumstances"]; *In re Aljamie D*. (2000) 84 Cal.App.4th 424, 428 [mother's section 388 petition attached "completion certificates" for various programs, including parenting classes, a domestic violence program, and a job readiness workshop].) On the contrary, the only evidence on this point came from Hamilton, who has known mother for years, and believes strongly that mother remains ill-equipped to handle the responsibilities and pressures of parenting.

In sum, mother's section 388 petition was facially insufficient. She has not shown sufficiently changed circumstances, nor has she shown how the provision of reunification services or unmonitored visitation would be in the child's best interest. For these reasons, we conclude the court did not abuse its discretion by denying the petition without a hearing.

### DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.